## Stringert *v.* Lastik Products Co., Inc., Appellant.

504

Argued October 2, 1959.  Before Jones, C. J., Bell, Jones, Cohen, Bok and McBride, JJ.

*William W. Milnes,* with him *Eugene B. Strassburger,* and *Brandt, Riester, Brandt & Malone,* and *Strassburger and McKenna,* for appellant.

*Ralph S. Davis, Jr.,* with him *Evans, Ivory & Evans,* for appellee.

OPINION BY MR. JUSTICE BOK, November 24, 1959:

Plaintiff was injured when he fell through a hole in a roof on October 23, 1954, on a building job at Fisher Body, Allegheny County.

He sued National Concrete Fireproofing Company, the general contractor, and Lastik Products Company, subcontracting to install a precast concrete roof. These defendants brought in the plaintiff's employer, the Limbach Company, also subcontracting to insulate the roof, as additional defendant.

The jury found for plaintiff and awarded him $30,000 against the two subcontractors, and found in favor of the general contractor. The Limbach Company has filed no motions, but Lastik Products Company asks for judgment n.o.v. and for a new trial.

Plaintiff was a college student doing summer labor. He was on the ground, shovelling slag into a hoist designed to lift it on to the roof, when he was assigned to go aloft and move the hoist to another location. He had not been on the roof before. He had to carry the hoist pipe across part of the roof and over a fire wall, and in making what he called a "general view" of the roof before entering on it he noticed three small vent holes near the outside of the roof and saw that they were protected by a barricade or curb of planking. The rest of the roof looked solid black: it had been covered with black tar paper and pitch and there were no lights or windows beneath it. He also said that the roof "looked flat except, of course, for the three vent covers ... I was watching where I was going."

Having made one trip with hoist pipe, he was told to help another workman raise a wheelbarrow over the fire wall. He described the ensuing events in these words: "Well, he had tipped the wheelbarrow up to the wall, handles to me. I grabbed the handles. And we lifted up the wheelbarrow. And I started to back up to let him get his part of the wheelbarrow over [the wall]. It's about four and a half foot long, I guess. And then he reached over and set the wheel down and I took one or two steps [backward] to turn the wheelbarrow around; and that's when I went through."

What he went through was an unguarded hole about four by six feet in size, about eight feet from the wall and ten feet from the edge of the roof. Lastik's men had cut the three smaller vent holes and had curbed or barricaded them, but they had not curbed the critical one. There was this testimony: "Q. Who did the slab work on this job? A. Lastic Products. . . . Q. Do you know how there happened to be a hole where that was? A. The [concrete] slabs were left out. . . . Q. Who closed in the [vent] holes? A. The slab men. Q. . . . When you observed the hole through which Mr. Stringert fell, were there any barricades around that particular hole? A. No, sir. Paper was run up to it and it was left wide open. . . . these other ones had curbs on, that you couldn't fall through there unless you jumped over the curb. . . ."

Plaintiff did not see the hole he fell through until he was on the ground twenty feet or more beneath it, and he did not look behind him immediately before he stepped backward.

Under these conditions the case was within the province of the jury. In *Duffy v. Peterson*, 386 Pa. 533 (1956), 126 A. 2d 413, where a workman tripped and fell over an electric wire left across a corridor of a building under construction, the jury resolved the questions of negligence, both direct and contributory, in

plaintiff's favor. We held that sub-contractors owe each other the care required towards business visitors, and we approved comment d about business visitors under Section 343 of the Restatement, Torts: "A business visitor is entitled to expect that the possessor will take reasonable care to ascertain the actual conditions of the premises and, having discovered it, either to make it reasonably safe by repair or to give warning of the actual condition and the risk involved therein."

It cannot be said that plaintiff's contributory negligence was so clear that there is no room for fair and reasonable minds to disagree about it: *Pro v. Pennsylvania Railroad Co.*, 390 Pa. 437 (1957), 135 A. 2d 920.

The following cases involve holes and were all left to the jury: *Iseminger v. York Haven W. & P. Co.*, 206 Pa. 591 (1903), 56 A. 66, also reported at 209 Pa. 615 (1904), 59 A. 64, where a woman approached a pavement from the side and after talking with a friend took a backward step without looking and vanished into a deep hole in the sidewalk; *Johnson v. Rulon*, 363 Pa. 585 (1950), 70 A. 2d 325, where a patron fell through a trap door in a restaurant floor while walking and reading the menu which was fastened to the opposite wall; *Mogren v. Gadonas*, 358 Pa. 507 (1948), 58 A. 2d 150, where a woman patron of a restaurant went seeking the ladies' room through a confusing series of corridors and doors and fell into a hole when she entered the wrong room by mistake; *Clewell v. Pummer*, 384 Pa. 515 (1956), 121 A. 2d 459, where a husband and wife in a country hotel went through an unlocked door, believing they were on the ground floor, only to find that the door opened on to a sloping porch which chuted them to the ground; *Pro v. Pennsylvania Railroad Co.*, supra (390 Pa. 437), where a woman's shoe caught in a hole in the uneven surface of a railroad crossing because she was confused by a train signal and did not look at the pavement.

In the instant case plaintiff looked at the roof and saw no hole but the three barricaded vents. The rest of the roof looked black and flat, and he had some reason for believing that if three holes were guarded, there would be no unguarded ones. Besides, he was working and needed his eyes for what he was doing. Whether he should have done more before wrestling with the wheelbarrow was for the jury to say, and we regard as adequate and proper the instructions of the trial judge in leaving the problem with them.

The defendant asserts that the verdict is excessive. The court below declared its conscience not shocked, and we agree that it need not be. The plaintiff has a permanently defective right ankle and right wrist. He is twenty-nine years old. His doctor and hospital bills were $1245.70. He was away from work about sixteen months and lost $4540 in wages. He then worked part time until his graduation two years later, and to what extent his partial labor was due to his injury or to his studies was for the jury. He has a degree in business administration, has been a licensed insurance agent, and is now licensed in real estate. He cannot dance or take part in sports as he used to. He has a slight limp and his wrist still pains. Under all of the circumstances we do not regard $30,000 as excessive compensation.

The judgment is affirmed.

---

DISSENTING OPINION BY MR. JUSTICE BELL:

I would enter a judgment non obstante veredicto in favor of Lastik Products Co., Inc.—it is difficult for me to envisage a stronger, clearer case of contributory negligence.

Mr. Justice BENJAMIN R. JONES joins in this dissenting opinion.