Raibley, Appellant, *v.* Marvin E. Kanze, Inc.

Argued December 7, 1971. Before WRIGHT, P. J., WATKINS, MONTGOMERY, JACOBS, HOFFMAN, SPAULDING, and CERCONE, JJ.

*Joel Friedman,* for appellant.

*James A. McGoldrick,* for appellee.

OPINION BY CERCONE, J., March 24, 1972:

Plaintiff appeals from the refusal of the court below to take off a nonsuit entered after a determination that the evidence presented was insufficient to establish a cause of action. The sole question before us is whether the entry of the compulsory nonsuit was proper.

On September 27, 1968 plaintiff entered into a contract with defendant for replacement of an oil heating system in her home with a gas heating and air-conditioning system. Pursuant to the contract, defendant on October 25, 1968 arrived at plaintiff's house to commence the work estimated to take several days to complete. Prior to the beginning of work plaintiff called her oil supplier (Humble Oil Company) to cancel her orders and stop all oil deliveries to her home. At trial plaintiff testified that in order "to make double sure" of the oil cancellation she later sent a confirming letter to Humble, which Humble re-confirmed by phone. Before the work began, plaintiff told defendant that she had cancelled oil deliveries to her home. On this first day at work, defendant's employees disconnected the oil tank, ran a line from their truck outside and

pumped all the oil out of the tank. In addition, they removed the old oil heating equipment, installed and connected the new gas heating system, and worked to put it in operable condition so that plaintiff could have heat. One day being insufficient to complete the job, defendant had scheduled the return of his workmen for the following morning to continue the work, which would include removal of the oil-fill pipes that led to the outside of the house. Early the next day the plaintiff's basement was found flooded with oil. Someone had delivered oil to plaintiff's house and poured it into the outside oil-fill pipe. Since the tank had been disconnected from the oil-fill pipe, the oil flooded plaintiff's basement. The deliverer of the oil was never identified.

Although plaintiff offered testimony that it was customary to remove or plug the outside oil-fill pipe *after* disconnecting the tank,[1] further testimony revealed that defendant was fully aware of this custom and did intend to remove the pipe. Defendant, however, had worked late into the evening and did not have the time to remove the oil-fill pipe, which was embedded into the cellar wall. Defendant's workmen told plaintiff they would remove the fill pipe upon their return on the following morning, and when they returned the next morning the mysterious delivery of oil and subsequent flooding had occurred.

Plaintiff testified that after much investigation she had been unable to tell what oil company had made

---

[1] "What usually is done may be evidence of what ought to be done, but what ought to be done is fixed by a standard of reasonable prudence. . . ." *Texas & Pac. R. Co. v. Behymer*, 189 U.S. 468, 470 (1903), per HOLMES, J. ". . . as a general rule, the fact that a thing *is done in an unusual manner* is merely evidence to be considered in determining negligence, and is not in itself conclusive." Prosser, Handbook of the Law of Torts, §33 at p. 168 (4th Ed. 1971) (emphasis supplied).

the unauthorized delivery. There was no indication that it had been delivered by Humble Oil Company.[2] There was also evidence that the outside cap of the intake pipe had a distinctive design of Humble Oil Company on it in order to prevent unauthorized or mistaken deliveries by other companies. The use of such designs or identifiable caps was a widespread custom in the industry so that no driver would usually or normally make a delivery to a place not bearing his company's cap. Since defendant knew of the Humble oil cap on the outside of the intake pipe and was further aware of the custom in the industry pertaining to the presence of such a cap, and coupled with the additional assurance of plaintiff's cancellation of further deliveries, we fail to see wherein defendant acted unreasonably when his crew left work late in the evening to return the next morning in order to complete their work.

Confronted with the knowledge of the above facts and information, defendant's conduct was completely reasonable under the circumstances. Vicarious liability should not be visited upon the defendant as a result of the unforeseeable negligence of a third person, simply because the identity of that person is unknown to the plaintiff. Accordingly, it is clear that the plaintiff did not establish a claim against the defendant with the requisite quantum of evidence from which a jury could reasonably conclude that the defendant acted negligently.

It is clear in this case that plaintiff has failed to establish her claim by a fair preponderance of the evi-

---

[2] Not only was Humble on notice of the cancellation, but investigation revealed that it made no deliveries that night in the neighborhood. Although plaintiff contacted several other oil companies, nothing was revealed to link any of them with the misdelivery at plaintiff's residence. Furthermore, in spite of general practice, no delivery invoice had been left that would provide identification.

dence. *Flagiello v. Crilly,* 409 Pa. 389 (1963). It is elementary law that the mere happening of an accident does not establish or prove negligence. *McElhinny v. Iliff,* 436 Pa. 506 (1970); *Laubach v. Haigh,* 433 Pa. 487 (1969); *Miller v. Delaware Co. Mem. Hosp.,* 428 Pa. 504 (1968); *Fegely v. Costello,* 417 Pa. 448 (1965); *Flagiello v. Crilly,* supra. Rather, the burden of proof is on the plaintiff to prove by a fair preponderance of the evidence that the defendant was negligent and that this negligence was the cause of the injuries for which plaintiff seeks compensation. *Engle v. Spino,* 425 Pa. 254 (1967); *Nock v. Nock,* 415 Pa. 568 (1964); *Shirley v. Clark,* 441 Pa. 508 (1970).[3]

Entry of compulsory nonsuit was similarly discussed in our recent decision of *Pastuszek v. Murphy Plywood Corporation,* 219 Pa. Superior Ct. 59 (1971). There we held that in order to have a case go to the jury, one must at least show a prima facie case. The requirement for a prima facie case in negligence is to prove that one or more of the defendants had a duty to the plaintiff and that a breach of such duty was the proximate cause of the plaintiff's injury. We further quoted from the opinion of *Lear v. Shirk's Motor Express Corporation,* 397 Pa. 144 (1959), in which it was noted that a plaintiff becomes entitled to have his case considered by the jury *when "he produces* evidence which may properly be found by the jury to justify an inference

---

[3] Also in the *Shirley* opinion, at page 511 appears the following footnote: "In First Meth. Epis. Church v. Bangor Gas Co., 7 Pa. D. & C. 2d 730, WOODRING, J., aptly said (page 737): ' "Negligence on the part of the defendant cannot be presumed from the mere showing of an explosion or the happening of the accident. In order to recover plaintiff must produce competent evidence to show wherein defendant failed in its duty to plaintiff, and further that the breach of that duty was the cause of plaintiff's loss. . ." ' This Opinion was affirmed, per curiam, by the Supreme Court of Pennsylvania, at 388 Pa. 115, 130 A. 2d 517 (1957)."

that the defendant's negligence was the proximate cause of the accident *because such evidence outweighs* . . . an inference that the defendant was not negligent or that his negligence was not the proximate cause of the accident", supra, p. 62. (Emphasis supplied.)

Applying these authorities and for the above reasons discussed, the judgment of the lower court in refusing to take off the nonsuit is affirmed.