394 A.2d 559

Leo McKENZIE, Appellant,

v.

COST BROTHERS, INC.,

v.

DICKERSON STRUCTURAL CONCRETE CORPORATION,
Nadco Construction, Inc., Tassos Katselas and R. M.
Gensert Associates.

Superior Court of Pennsylvania.

Argued April 11, 1978.

Decided Nov. 1, 1978.

Allan H. Cohen, Pittsburgh, for appellant.

P. R. Riley, B. W. Ashbaugh, Paul D. Kruper, and W. Arch Irvin, Jr., Pittsburgh, with them Wayman, Irvin & McAuley, Pittsburgh, for appellees.

Before JACOBS, President Judge, and HOFFMAN, CERCONE, PRICE, VAN der VOORT, SPAETH and HESTER, JJ.

PER CURIAM:

The six Judges who decided this appeal being equally divided, the order of the Court below is affirmed.

CERCONE, J., files an opinion in support of affirmance in which PRICE and VAN der VOORT, JJ., join.

HESTER, J., files an opinion in support of reversal in which JACOBS, President Judge and SPAETH, J., join.

HOFFMAN, J., did not participate in the consideration or decision of this case.

CERCONE, Judge, in support of affirmance:

This is an appeal from the denial of a motion to take off a compulsory nonsuit in a trespass action. We affirm the decision of the lower court.

Plaintiff, Leo McKenzie, sustained personal injuries while employed as a bricklayer for Dickerson Structural Concrete Corporation, an additional defendant joined in this case. Dickerson was a subcontractor hired by the general contractor, Nadco Construction, Inc., another additional defendant in this case, to lay concrete-plank floor-ceiling in a 14-story apartment building in the East Hills of Pittsburgh. The remaining additional defendants, Tassos Katselas and R.M. Gensert Associates, were the architect and engineers on the project respectively. The defendant, Cost Brothers, Inc. was the subcontractor for the construction of the masonry walls on the project.

The work to be done by Cost was to construct the walls of the apartment building which consisted of eight-inch concrete block and four inch brick veneer. In the corridor walls, a 900 pound lintel was to be placed over each doorway to complete each doorway frame.

The work to be done by Dickerson was to install four feet wide concrete planks that would serve as the ceiling for the first level and as the floor for the next level. These concrete planks were installed with their ends resting on the walls constructed by Cost.

On Friday, October 1, 1971, Cost had proceeded with the construction of the walls of the second floor of the building and some of the lintels over the doorways had been set in place. At about 3:30 P.M. that day, one of Cost's laborers was instructed to adjust the lintels which had been placed over the doorways. This task involved positioning the lintels and inserting mortar to seal the lintel into the brick on

which it was placed. The laborer was only able to do this on one of the lintels on the second floor before it was time to quit work for the day.

On Saturday, October 2, 1971, Dickerson's crew arrived on the site to lay the concrete planks on the walls constructed by Cost. Plaintiff, Leo McKenzie, was instructed to climb up on the second story wall of the building to help guide and position a plank that would be hoisted up by a crane below. As plaintiff walked along the wall, he stepped on a lintel which had been placed over a doorway but had not been adjusted or sealed. In McKenzie's words, "It [the lintel] started to move, and as it moved, I felt myself going. So in the meantime I sort of jumped and landed on my feet, and then I fell over." The lintel fell and landed beside the plaintiff, its impact damaging the floor below.

At the close of plaintiff's case on liability, all the defendants' motion for a compulsory nonsuit was granted. Plaintiff's motion to take off the nonsuit was heard by the court en banc and denied. The two issues preserved before us on appeal are whether the lower court erred in refusing to submit the question of Cost's negligence to the jury, and whether one of the plaintiff's witnesses, an engineer, should have been permitted to testify at trial.

## I.

When reviewing the issue of whether a compulsory nonsuit should have been granted,

"Plaintiff must be given the benefit of every fact and every reasonable inference of fact arising from the evidence, whether direct or circumstantial, and all conflicts must be resolved in the plaintiffs favor. *McDonald v. Ferrebee*, 366 Pa. 543, 79 A.2d 232 (1951). A compulsory nonsuit may be entered only in a clear case where the facts and circumstances lead unerringly to but one conclusion. *McNett v. Briggs*, 217 Pa.Super. 322, 272 A.2d 202 (1970)." Cited in *Jurich v. United Parcel Service of New York, Inc.*, 239 Pa.Super. 306, 361 A.2d 650 (1976).

In order for a case to go to the jury, a prima facie case must be shown. In a negligence issue, such as the one before us, plaintiff had to prove that one or more of the defendants owed a duty to the plaintiff, that the duty was breached, and the breach was the proximate cause of the injury sustained. *Raibley v. Marvin E. Kanze, Inc.*, 221 Pa.Super. 234, 238, 289 A.2d 161 (1972). We agree with the opinion of the lower court that plaintiff's testimony did not show negligence on the part of defendants but merely demonstrated the happening of an accident for which there can be no recovery. *Raibley v. Marvin E. Kanze, Inc.*, supra.

When making that determination, we find first that defendant, Cost, as a subcontractor, owed plaintiff, a business visitor, a duty of reasonable care in protecting him from injury. In *Duffy v. Peterson*, 386 Pa. 533, 126 A.2d 413 (1956) and *Bitting v. Wolfe*, 368 Pa. 167, 82 A.2d 21 (1951), our Supreme Court applied sections 384 and 343 of the Restatement (2d) of Torts [1] to the subcontractor situation,

1. "§ 384. Liability of Persons Creating Artificial Conditions on Land on Behalf of Possessor for Physical Harm Caused While Work Remains in Their Charge

One who on behalf of the possessor of land erects a structure or creates any other condition on the land is subject to the same liability, and enjoys the same freedom from liability, as though he were the possessor of the land, for physical harm caused to others upon and outside of the land by the dangerous character of the structure or other condition while the work is in his charge."

"§ 343. Dangerous Conditions Known to or Discoverable by Possessor

A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he

(a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and

(b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and

(c) fails to exercise reasonable care to protect them against the danger."

\* \* \* \* \* \*

Comment (d) under section 384:

"(d) What invitee entitled to expect. An invitee is entitled to expect that the possessor will take reasonable care to ascertain the actual condition of the premises and, having discovered it, either to make it reasonably safe by repair or to give warning of the actual condition and the risk involved therein. Therefore an invitee is not

thereby adopting this standard of reasonable care under these facts.

■ Appellee, Cost, concedes that such a duty of due care was owed the plaintiff. However, Cost argues there was insufficient evidence produced to support a jury finding that the duty was breached in this case. We agree. The facts established through the testimony, and so comprehensively set forth in the opinion of the lower court, show that Cost was responsible for the construction of the masonry walls. The Cost wall was not complete on the day Dickerson arrived to construct the floors; the eight inch concrete block wall had been constructed and the lintels set in place, but the four inch brick veneer and the adjusting and sealing of the lintels had not taken place. Cost did not work on the site on Saturday, the day of the accident, although there is testimony by one Cost employee that he had heard Dickerson would be on the job that day. There is no evidence that Cost knew Dickerson employees would be walking on the incomplete walls. The Dickerson foreman testified that the general contractor was responsible for the scheduling of the subcontractor's work, but there was no further evidence of any work schedule for the Saturday in question.

■ Case law does not support a finding of negligence based on these facts alone. First, plaintiff did not establish whether the practices used by Cost in constructing the masonry walls and leaving them incomplete breached any duty Cost owed Dickerson. Comment d under Section 343 of the Restatement (2d) of Torts[2] requires the possessor of land, i. e., the contractor, Cost, either to make the conditions of the premises reasonably safe or to give warning of actual

required to be on the alert to discover defects which, if he were a mere licensee, entitled to expect nothing but notice of known defects, he might be negligent in not discovering. This is of importance in determining whether the visitor is or is not guilty of contributory negligence in failing to discover a defect, as well as in determining whether the defect is one which the possessor should believe that his visitor would not discover, and as to which, therefore, he must use reasonable care to warn the visitor."

2. See Note 1.

conditions to the business invitee Dickerson. However, this comment cannot be read to make the contractor an insurer for all business visitors coming on the premises. Construction sites can be dangerous where certain parts of work are left incomplete at the end of the day, a normal concomitant of construction work process. Leaving work incomplete at different stages of construction does not mean a contractor or subcontractor is negligent. Any worker traversing a project under construction should be aware that a normal situation always present is incomplete work structures. To expect that every phase of work should be completed before the work day terminates would necessitate around the clock work schedules, a condition, Cost, the subcontractor was not obligated to meet.

In *Raibley v. Marvin E. Kanze, Inc.,* supra, a compulsory nonsuit was entered against the plaintiff for failure to make out a prima facie case of negligence. There, plaintiff hired defendant to replace them oil heating system in her home. Plaintiff had cancelled all oil deliveries while defendant worked on the new heating system. Defendant did not entirely complete the work at quitting time one evening and left the oil-fill pipe disconnected. In the early morning, an unidentified company delivered oil to plaintiff's home, which flooded her basement due to the unconnected incomplete pipe. This court said defendant's conduct was reasonable in that what they could not finish they left for the next day. The compulsory nonsuit was sustained.

There are distinguishing factors when comparing the *Raibley* case to the one before us, but the principle of the reasonableness of defendant's conduct in leaving some phase of work incomplete at quitting time applies to Cost's performance on the construction site in question.

■ Second, plaintiff did not establish the industry standards that are generally followed in the construction of masonry walls and whether Cost's work was below the accepted standards of the trade. In a complex situation such as construction, neither the court nor the jury is knowledgeable enough on the subject involved to determine

what standards should have been met. Expert testimony setting forth these standards becomes most important in determining any question of negligence so as to avoid the jury's mere conjecture on the subject. See *Jemison v. Pfeifer*, 397 Pa. 81, 152 A.2d 697 (1959) dealing with the question of whether an adequate inspection of premises was made. Here, all the jury would have had to consider was the testimony of the Dickerson foreman and one Cost bricklayer concerning what they did on this job. The general customs of the trade were not laid forth for the jury to determine whether any breach had occurred. This leaves too much room for conjecture and no basis for reasoned deliberation by the jury.

 · Finally, there is only circumstantial evidence of the accident which is insufficient to sustain an inference of negligence. This is similar to *Sharble v. Kuehnle-Wilson Inc.*, 359 Pa. 494, 59 A.2d 58, cert. denied 336 U.S. 914, 69 S.Ct. 604, 93 L.Ed. 1078 (1948). There plaintiff was injured when he fell through part of a roof that had wet paint on it, after he had been told it was safe to work on. The only evidence of wet paint was spots on plaintiff's arms and a smudge on the roof. The court held other possibilities of what caused the accident were not precluded by the evidence presented and therefore judgment n. o. v. was entered in favor of defendants. In the case before us, we have testimony that the lintel actually fell from its place. Fellow workers heard the noise of its falling. However, the masonry walls were not constructed to be walked on and it is questionable whether Cost knew Dickerson would be on the job the next day to construct the floors and ceilings. These facts show the happening of an accident, but without the showing of the breach of some duty and industry standard due to incomplete work, an inference of negligence of Cost cannot be made in this case.[3]

**3.** The major cases relied upon by appellant clearly show a deviation from accepted practices in the construction industry and are distinguishable on that point. For example, in *Stringer v. Lastik Products Co., Inc.*, 397 Pa. 503, 155 A.2d 625 (1959), plaintiff fell backward through a hole left by a subcontractor who failed to place several

 We find that the lower court did not abuse its discretion in refusing to take off the nonsuit against defendant Cost. As to the other defendants, we affirm the decision of the lower court that nonsuit should be entered. There is no evidence whereby an inference could be made that any of the additional defendants was negligent. Furthermore, they were joined after the running of the two-year statute of limitations.[4]

## II.

 The second issue raised is whether the lower court judge erred in excluding the testimony of a civil engineering professor called by the plaintiff. We agree with the lower court here that the engineer's testimony was properly excluded. The court's ruling was based on the pretrial report of the engineer that included facts not established in evidence.[5] An expert may only base his opinion on facts already in evidence or on facts he or she personally observed. Absent either of those bases in fact, the expert's opinion testimony is inadmissible. *Rose v. Hoover*, 231 Pa. Super. 251, 331 A.2d 878, 880 (1974). In this case, the record reveals that the engineer was going to testify consistently from his report. Since the report was based on facts not in

concrete slabs in place on a construction site. The court held plaintiff's suit was properly within the province of the jury, even though he did not see the hole until after he had fallen through it. Likewise in *Bitting v. Wolfe,* supra, plaintiff was injured on a walkway on a construction site which was built by defendant-subcontractor. Despite defendant's contention that no evidence had been produced to show improper construction, the court found there were facts in the record indicating the planks were improperly fastened and hence verdict for plaintiff was affirmed.

4. Dickerson was also the "statutory employer" under the Workman's Compensation Act which makes it immune from suit. 77 P.S. § 1 et seq.

5. The report concluded that the accident occurred as a result of a dangerous construction practice. However, the figures used in the report differed substantially from those in evidence. For example, the lintel weight was given as 700 lbs. when the testimony showed it weighed 900 pounds. The report also had the lintel placed on a mortar bed and that plaintiff stepped on the outermost edge of the lintel. Neither fact was established at trial.

evidence or personally observed by the expert, we must affirm the decision of the lower court which excluded his testimony.[6]

Order of the lower court affirmed.

PRICE and VAN der VOORT, JJ., join in this opinion.

HOFFMAN, J., did not participate in the consideration or decision of this case.

HESTER, Judge, in support of reversal:

I respectfully dissent.

It is my opinion that the trial court erred in granting appellees' motion for the entry of non-suit at the close of appellant's case; and further, that the trial court committed an abuse of discretion when it excluded appellant's expert witness from testifying on the issue of the alleged dangerousness of the construction procedure employed at the job site at the time when appellant sustained his injuries.

At page 562 of the majority opinion, this court accurately sets forth the narrow confines wherein the grant of a compulsory nonsuit is appropriate:

Plaintiff must be given the benefit of every fact and every reasonable inference of fact arising from the evidence, whether direct or circumstantial, and all conflicts must be resolved in the plaintiffs favor. *McDonald v. Ferrebee,* 366 Pa. 543, 79 A.2d 232 (1951). A compulsory nonsuit may be entered only in a clear case where the facts and circumstances lead unerringly to but one conclusion. *McNett v. Briggs,* 217 Pa.Super. 322, 272 A.2d 202 (1970). Cited in *Jurich v. United Parcel Service of New York, Inc.,* 239 Pa.Super. 306, 361 A.2d 650 (1976).

6. The expert may have been permitted to testify concerning the general industry standards involved in this case. *Cummings v. Nazareth Borough,* 427 Pa. 14, 233 A.2d 874 (1967). However, when the trial judge asked plaintiff's counsel whether the expert would testify consistently from the report, the answer was "yes." Under these circumstances, where the facts in the report were not in evidence, an expert may not testify concerning the legal conclusion of the case. *Maholland v. Bird,* 230 Pa.Super. 431, 326 A.2d 528 (1974).

Prior to the submission of a case to a jury, a prima facie case must be made out. The mere happening of an accident standing alone is not sufficient to submit for a jury's deliberations. Liability may only attach when accompanied with a showing of negligence by one or a combination of all of the defendants.

It is appellant's position and one in which I concur, that Sections 384 and 343 of the Restatement of Torts 2d, may be applicable in the instant case and as such the issue of the negligence of appellee-Cost should have been submitted to the jury. There is no doubt that in Pennsylvania, each subcontractor on a construction job owes the same duty of care to employees of other subcontractors which a possessor of land owes to a business visitor. In this regard, I believe that appellant introduced sufficient evidence that the lintel in question had been installed by appellee-Cost in an unstable and hazardous fashion; that appellee-Cost left the lintel in a precarious position when it stopped its work at the end of the work day on Friday, October 1, 1971, when it knew or in the exercise of reasonable care, should have known that the lintel was unstable and a group of persons of which the appellant was a member, would be required to work upon the unstable lintel the following morning but would be unaware of its unstable and precarious condition.

In *Duffy v. Peterson*, 386 Pa. 533, 538, 126 A.2d 413, 416 (1956), the Pennsylvania Supreme Court concluded: "All individual subcontractors engaged in a common enterprise owe to each other the duty of care required to business visitors."

Section 343 of the Restatement of Torts 2d captioned "Dangerous Conditions Known to or Discoverable by Possessor" at Comment (d) provides:

*What invitee entitled to expect. An invitee is entitled to expect that the possessor will take reasonable care to ascertain the actual condition of the premises and, having discovered it, either to make it reasonably safe by repair or to give warning of the actual condition and the risk involved therein. Therefore an invitee is not required to*

be on the alert to discover defects which, if he were a mere licensee, entitled to expect nothing but notice of known defects, he might be negligent in not discovering. This is of importance in determining whether the visitor is or is not guilty of contributory negligence in failing to discover a defect, as well as in determining whether the defect is one which the possessor should believe that his visitor would not discover, and as to which, therefore, he must use reasonable care to warn the visitor. (Emphasis added)

Moreover, Section 384 of the Restatement of Torts 2d provides:

§ 384. Liability of Persons Creating Artificial Conditions on Land on Behalf of Possessor for Physical Harm Caused While Work Remains in Their Charge

One who on behalf of the possessor of land erects a structure or creates any other condition on the land is subject to the same liability, and enjoys the same freedom from liability, as though he were the possessor of the land, for physical harm caused to others upon and outside of the land by the dangerous character of the structure or other condition while the work is in his charge.

The majority opinion concluded that there was insufficient evidence produced to support a jury finding that the duty owed by Cost to appellant was breached in the instant case. The majority affirmed the lower court's conclusion that there was no evidence that appellee-Cost knew or should have known that a class of persons of which appellant was a member, would be walking upon the unstable lintel early the next morning. The record, however, does not support this conclusion:

Q And in constructing—or in erecting—the concrete planks which you are going to erect would it be necessary for your workmen to walk on the tops of all these walls?

A That's correct, the erection crew, right, we have to get on the walls.

Q Why is that? I mean, why do the men have to stand on the walls? Is that to lay the plank?

A Right, the walls receive the plank, and you have to have a couple men up there to grab them, guide them and steer them into position. They have to be on the walls; there's no other way of doing it. (R. pp. 120a, 121).

Q And would you tell us what happened.

A Yes. I don't know how many men was on the wall with me. I would say probably three or four. And we have to naturally, like I stated before, we have to walk the walls . . . (R. p. 122a).

As stated above, appellant's theory of liability in the instant case was predicated upon sections 343 and 384 of the Restatement of Torts 2d. It is my opinion that appellant's evidence was more than sufficient to constitute a jury question. The learned and productive trial court, during an intensive sidebar discussion with the five attorneys involved in this hotly contested, complex, jury trial, appears to have inadvertently misinterpreted the appellant's theory of liability:

THE COURT: Yes, but you see, Allan, your case isn't predicated that that wall was built to walk on.

MR. COHEN: Oh, yes, the Cost Brothers knew the wall was going to be walked on.

THE COURT: No, the wall was a part of the general construction, and then you would be laying the flooring and ceiling on the wall. *It wasn't constructed for the purpose of walking on it.*

MR. COHEN: But men have to get up on this wall and walk on it, and Cost Brothers knew it; that's clear in the evidence.

THE COURT: *But that's not Cost Brothers' fault because somebody goes in and starts the job. They have no business starting.*

MR. COHEN: That's not true. They knew that Dickerson was coming.

THE COURT: *I don't care whether they knew. That doesn't require them to go in and put up the brick and put the lintels in. They do their work when they have the time to do it.*

MR. COHEN: We're going to show it was in a precarious position. (Emphasis added) (R. pp. 243a, 244a).

I believe that the issue of liability as to Cost Brothers should have been submitted to the jury.

Pennsylvania appellate courts have long held that a "nonsuit can be entered only when it is inconceivable, on any reasonable hypothesis, that a mind, desiring solely to reach a just and proper conclusion in accordance with the relevant governing principles of law, after viewing the evidence in the light most advantageous to the plaintiff, could determine in his favor the controlling issues involved." *Borisoff v. Penn Fruit Company, Inc.,* 165 Pa.Super. 572, 574, 69 A.2d 167, 167–168 (1949).

Based upon the above standard, I am of the opinion that the entry of a nonsuit was in error.

Additionally, it is my opinion that the lower court committed an abuse of discretion when it refused to permit appellant's expert witness to testify as to the alleged dangerous construction practice employed at the site of appellant's injuries on October 2, 1971.

In spite of the limited scope of review which this court has in reversing, overriding or disturbing a trial court's ruling on the admissability or inadmissability of expert opinion evidence (*Laubach v. Haigh,* 433 Pa. 487, 252 A.2d 682 (1969), I feel that the trial court committed an abuse of discretion in prohibiting appellant's expert witness from testifying. Following a review of the record, I find that Professor Romualdi was improperly denied the opportunity of offering expert opinion testimony with respect to the alleged dangerous construction practices being employed at the time of appellant's injuries and, thereafter, with respect to the alleged proximate cause thereof. The trial court excluded Professor Romualdi's expert testimony on the basis that his

ultimate opinion as to the cause of appellant's fall was based upon material facts allegedly not in evidence. Specifically, the trial court found that there was no testimony to the effect that appellant had stepped on the edge of the lintel prior to his fall; that the bricks, or the lintel itself, was positioned exactly as set forth in figures 4 and 5 attached to Romualdi's report; and that the lintel weighed 700 pounds when it allegedly weighed 900 pounds.

However, Professor Romualdi's expert report and exhibits attached to appellant's pre-trial statement, adequately apprised all appellees that appellant's expert's testimony would be founded on the theory that appellant's fall was caused by a dangerous construction practice at the job site. With respect thereto, there was nothing in the evidence to contradict Romualdi's opinion that the process of placing a heavy lintel with a crane would lead to distortion of a relatively fresh mortar joint and that it is highly probable that any slight irregularity in the mortar joint under the brick, would enable the lintel to move under the weight of a person and topple off the wall.

Professor Romualdi should have been afforded the opportunity of testifying and thereafter should have been subject to cross-examination. Romualdi's opinion as to the cause of appellant's fall, was not based on assumptions which were dehor the record.

I therefore believe that the trial court acted improvidently in prohibiting Romualdi from testifying; and that that prohibition was an abuse of the trial court's discretion.

I would remove the non-suit and remand for a new trial.

JACOBS, President Judge, and SPAETH, J., join in this Opinion.

HOFFMAN, J., did not participate in the consideration or decision of this case.