409 A.2d 362

**Leo McKENZIE, Appellant,**

**v.**

**COST BROTHERS, INC., Appellee,**

**v.**

**DICKERSON STRUCTURAL CONCRETE CORPORATION and Nadco Construction, Inc., Tassos Katselas and R. M. Gensert Associates, Additional Defendants-Appellees.**

Supreme Court of Pennsylvania.

Argued Sept. 20, 1979.

Decided Dec. 21, 1979.

Allan H. Cohen, Gatz, Cohen, Segal & Kerner, Pittsburgh, for appellant.

Frederick N. Egler, Avrum Levicoff, Egler & Reinstadtler, Pittsburgh, for Cost Brothers, Inc.

Jerome W. Kiger, Grogan, Graffam, McGinley & Solomon, Pittsburgh, for Dickerson Structural Concrete Corp.

Daniel F. Cusick, Stein & Winters, Pittsburgh, for Nadco Construction, Inc.

W. Arch Irvin, Jr., Wayman, Irvin & McAuley, Pittsburgh, for Tasso Katselas.

Raymond G. Hasley, Rose, Schmidt, Dixon, Hasley & Whyte, Pittsburgh, for R. M. Gensert Associates.

Before EAGEN, C. J., and O'BRIEN, ROBERTS, NIX, MANDERINO, LARSEN and FLAHERTY, JJ.

## OPINION

NIX, Justice.

A compulsory non-suit was entered in this trespass action by the trial court. A subsequent motion to take off the non-suit was also denied. The Superior Court affirmed by an equally divided court in an Opinion in Support of Affirmance by President Judge Cercone in which Judges Price and Van der Voort joined. 260 Pa.Super. 295, 394 A.2d 559 (1978). This appeal followed.[1]

Appellant, Leo McKenzie, filed this accident in trespass on September 25, 1973 for personal injuries he sustained while on the job at the construction site of a fourteen-story apartment building in East Hills, Allegheny County, on October 2, 1971. Named as defendant was a subcontractor for the job, Cost Brothers, Incorporated. Cost then joined as third party defendants: Dickerson Structural Concrete Corporation (appellant's employer); Nadco Construction, Inc. (the general contractor); and Tassos Katselas (the architect). Katselas later joined R. M. Gensert Associates (structural engineers) as additional defendants. The original defendant and third party defendants are appellees here.

Cost Brothers, Inc. was engaged to construct the walls of the building and to secure into place nine hundred pound, precast concrete blocks known as lintels, which spanned the top openings in the corridor walls to complete the doorway entrances. When set properly, the lintels would sit flush with the concrete walls and constitute the surface upon which appellant's employer (Dickerson) would set the precast concrete planks which acted both as ceiling of the level below and floor of the next story to be constructed.

1. Pa.R.A.P. No. 1112.

On Friday, October 1, 1971, an employee for appellee Cost, Mr. McDonough, was working on a lintel. Because the end of the workday came, the employee was unable to complete the installation. The lintel was not left in the flush position, but rather supported by a brick. No mortar was placed to secure the lintel to the brick nor to seal the void between the lintel and the wall. The employee intended to complete the installation on the next scheduled workday, Monday, October 4, 1971. No notice of the condition was posted. On Saturday, October 2, 1971, the Dickerson work crew came on the job site and the appellant ascended the wall. While assisting the laying of one of the ceiling/floor planks, he stepped on the unstable lintel and fell, incurring serious injury.

■ In reviewing the validity of the entry of a compulsory nonsuit, plaintiff must be given the benefit of every fact and reasonable inference arising from the evidence. *See Francioni v. Gibsonia Truck Corp.*, 472 Pa. 362, 372 A.2d 736 (1977); *Forry v. Gulf Oil Corp.*, 428 Pa. 334, 237 A.2d 593 (1968); *Wilson v. Howard Johnson Restaurant*, 421 Pa. 455, 219 A.2d 676 (1966). All conflicts in the testimony must be resolved in plaintiff's favor and the entry of the compulsory nonsuit is only supportable in a clear case where the facts and circumstances have as the only conclusion the absence of liability. *See Francioni v. Gibsonia Truck Corp., supra; Antonson v. Johnson*, 420 Pa. 558, 218 A.2d 123 (1966); *Jurich v. United Parcel Service of New York*, 239 Pa.Super. 306, 361 A.2d 650 (1976).

■ The trial court was of the view that a subcontractor, who was charged with an assignment that was scheduled to be completed prior to the commencement of the work of a second subcontractor, had no duty to the employees of the second subcontractor until the completion of his job. This conclusion is obviously at odds with the well recognized principle, adopted in this jurisdiction, that a subcontractor on a construction job owes to employees of other subcontractors, on the same site, the care due a business visitor from a possessor land. *Stringert v. Lastik Products Co., Inc.*, 397

Pa. 503, 155 A.2d 625 (1959); *Duffy v. Peterson,* 386 Pa. 533, 126 A.2d 413 (1959). This Court has expressly adopted sections 384 [2] and 343 [3] of the Restatement of Torts, 2d, as being applicable in such situations. *Stringert v. Lastik Products Co., Inc., supra; Duffy v. Peterson, supra.*

Although both views expressed in the Superior Court recognized the applicability of sections 384 and 343, they differed as to whether appellant's evidence established a basis for a finding of liability under the theory of these provisions. We are of the view expressed by Judge Hester that appellant's evidence provided a basis for presenting the dispute for resolution by a jury.

The judges who have embraced the position that no liability exists under the evidence offered by appellant appear to focus upon the fact that construction projects are inherently dangerous. The law of torts has traditionally required a higher degree of care in situations where the risk of injury is greater, not a lesser degree as is urged by appellee Cost.

Vigilance must always be commensurate with danger. A high degree of danger always calls for a high degree of care. The care to be exercised in a particular case must

**2.** **§ 384. Liability of Persons Creating Artificial Conditions on Land on Behalf of Possessor for Physical Harm Caused While Work Remains in Their Charge**
One who on behalf of the possessor land erects a structure or creates any other condition on the land is subject to the same liability, and enjoys the same freedom from liability, as though he were the possessor of the land, for physical harm caused to others upon and outside of the land by the dangerous character of the structure or other condition while the work is in his charge.
Restatement (Second) of Torts, § 384 (1965).

**3.** **§ 343. Dangerous Conditions Known to or Discoverable by Possessor**
A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he
(a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and
(b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and
(c) fails to exercise reasonable care to protect them against the danger.
Restatement (Second) of Torts, § 343 (1965).

always be proportionate to the seriousness of the consequences which are reasonably to be anticipated as a result of the conduct in question.

*MacDougall v. Penna. Power & Light Co.,* 311 Pa. 387, 396, 166 A. 589, 592 (1933); *Jemison v. Pfeifer,* 397 Pa. 81, 89, 152 A.2d 697 (1959).

This was also aptly pointed out by Professor Prosser in his treatise.

The amount of care demanded by the standard of reasonable conduct must be in proportion to the apparent risk. As the danger becomes greater, the actor is required to exercise caution commensurate with it.

W. Prosser, Handbook of the Law of Torts (4th ed. 1971) p. 180.

Two comments to section 343 are particularly germaine to the instant discussion. Comment (d) provides:

d. *What invitee entitled to expect.* An invitee is entitled to expect that the possessor will take reasonable care to ascertain the actual condition of the premises and, having discovered it, either to make it reasonably safe by repair or to give warning of the actual condition and the risk involved therein. Therefore an invitee is not required to be on the alert to discover defects which, if he were a mere licensee, entitled to expect nothing but notice of known defects, he might be negligent in not discovering. This is of importance in determining whether the visitor is or is not guilty of contributory negligence in failing to discover a defect, as well as in determining whether the defect is one which the possessor should believe that his visitor would not discover, and as to which, therefore, he must use reasonable care to warn the visitor.

Restatement (Second) of Torts, § 343, Comment (d) (1965). Comment (e) provides in pertinent part:

e. *Preparation required for invitee.* In determining the extent of preparation which an invitee is entitled to expect to be made for his protection, the nature of the land and the purposes for which it is used are of great importance.

Restatement (Second) of Torts, § 343, Comment (e) (1965).

The members of the Superior Court who would affirm the action of the trial judge argue that incomplete work is a normal concomitant of the construction work process. *See e. g., Raibley v. Kanze, Inc.,* 221 Pa.Super. 234, 289 A.2d 161 (1972). While as a general statement this may be accepted, the question, nevertheless, remains as to what measures should have been required to terminate the day's work in such a manner as to render reasonably safe, or to provide adequate warning to avoid injuries to unwary business invitees on the site.

The Superior Court's reliance upon *Raibley v. Martin E. Kanze, Inc., supra,* as establishing that the appellee Cost acted reasonably in leaving the site without warning is misplaced. There the entry of a compulsory nonsuit was affirmed in favor of a contractor who at the end of the workday, while in the process of installing a new heating system in the plaintiff's home, left no warning that the fuel tank had been disconnected from the outside oil fill pipe. When an unsolicited oil delivery was made, the plaintiff's basement was flooded. The defendant contractor had no reason to believe or know that such a delivery was going to be made. In fact the testimony presented showed that the plaintiff had cancelled all deliveries and informed the defendant of that cancellation.

In the case at bar, evidence offered showed the appellee knew or should have known that Dickerson employees would be walking upon the walls while laying the ceiling planks. The previous level had been completed using this very procedure. Further, the appellee knew the Dickerson employees were coming on the construction site the following day. Yet the lintels were left in an unstable condition and no warning given.

In *Stringert v. Lastik Products Co., supra,* an employee of the subcontractor in charge of insulating a precast concrete roof recovered from a fellow subcontractor engaged to install the roof for injuries he sustained due to a fall through a hold in the roof which had been left unguarded. While

preoccupied with moving a wheelbarrow, the employee stepped backwards, having not been warned of the hole, failed to notice it, and fell. This Court found sufficient evidence was presented to place the case within the province of the jury and thereby affirmed the denial of a judgment n.o.v. and a motion for a new trial.

The contention that appellant failed to establish the standard of conduct as to what constitutes an "unreasonable risk of harm to such invitees" by the prescribed method: offering testimony expert or otherwise, as to the custom or practice in the industry for the given situation, lacks merit. *See Welsh v. Kleindener,* 440 Pa. 47, 269 A.2d 746 (1970).

. . . "Reason does not have to wait on usage; the latter must wait on reason. . . . " In his usually piquantly expressive language, . . . Justice Oliver Wendell Holmes said, . . . "What usually is done may be evidence of what ought to be done, but what ought to be done is fixed by a standard of reasonable prudence, whether it usually is complied with or not." *Hemrock v. Peoples National Gas Co.,* 423 Pa. 259, 269, 223 A.2d 687 (1966); *See McAdoo v. Authreith's Dollar Stores,* 379 Pa. 387, 392, 109 A.2d 156 (1954).

In *MacDougall v. Penna. Power & Light Co.,* 311 Pa. 387, 166 A. 589 (1933), a denial of a judgment n.o.v. was affirmed where the plaintiff employed to repair a rainspout was electrocuted when he came in contact with a fuse box which extended over the roof of the property. The failure of the defendant power company to place a warning sign on the fuse box foretelling its inherently dangerous qualities was seen to breach the standard of conduct required. Defendant's contention that plaintiff should not be allowed to recover because he had not presented evidence of industry custom was answered as follows:

. . . Customary methods or conduct do not furnish a test which is conclusive or controlling on the question of negligence, or fix a standard by which negligence is to be gaged. The standard of due care is such care as a prudent person would exercise under the circumstances of the

particular case, and conformity to customary or usual conduct or methods cannot amount to more than a circumstance to be considered together with other circumstances of the case in determining whether due care has been exercised: . . .

\* \* \* \* \* \*

If the act in question is obviously dangerous, then evidence of custom is inadmissible, because custom cannot change the quality of an act. . . . Hence, when its quality clearly appears from the act itself, there is no need to invoke the aid of custom to determine it.

*MacDougall v. Penna. Power & Light Co., supra,* 311 Pa. at 397, 166 A. at 592–593.

The present case involves an inherently dangerous condition. Appellant's failure to introduce evidence of industry custom cannot itself constitute grounds for a nonsuit. As previously noted, the evidence presented, when viewed with the applicable standard, establishes that: the appellee knew that to secure the lintel in place, mortar would have to be placed between it and the supporting brick and the void sealed; that at least one of the lintels was left in an unstable condition; that Dickerson employees were coming onto the construction site the following day; and it was likely that Dickerson employees would walk on the wall in order to complete their work. Nothing complex is involved in the present case. One does not need evidence of industry custom and practice to determine that a properly affixed warning, giving notice of the lintel's unstable condition would have affected the outcome.

 Finally, the fact that the additional defendants were joined after the statute of limitations had expired is an inappropriate ground to allow the nonsuit to stand. As joinder was sought alleging joint liability or liability over, the statute of limitations which seeks to bar only the plaintiff's cause of action, is inapplicable. *See* Pa.R.C.P. No. 2252 and Pa.R.C.P. No. 2253; Goodrich-Amram 2d §§ 2252(a): 9, 2253: 2 and cases cited therein.

The order of the Superior Court is reversed and the case is remanded to the Court of Common Pleas of Allegheny County, Civil Division, for proceedings in accordance with this opinion.

MANDERINO, J., did not participate in the decision of this case.