445 A.2d 716

**Amelia McNALLY and Daniel McNally, her husband, and
Daniel McNally, in his own right, Appellant**

**v.**

**Carl LIEBOWITZ, individually and trading as Sandwichland.**

Supreme Court of Pennsylvania.

Argued April 15, 1982.

Decided May 25, 1982.

164

John M. Hickey, Broomal, for appellant.

Bernard P. Carey, Jr., Upper Darby, for appellee.

Before O'BRIEN, C. J., and ROBERTS, NIX, LARSEN, FLAHERTY, McDERMOTT and HUTCHINSON, JJ.

## OPINION OF THE COURT

FLAHERTY, Justice.

On November 1, 1975 Amelia McNally entered a restaurant in Springfield, Pennsylvania called Sandwichland. Her

husband ordered coffee while Mrs. McNally proceeded to the rear of the building to use the restroom. She entered a door marked by a sign indicating "Restrooms." When she found herself in a darkened area inside the door, she turned to search for a light switch and fell down a flight of stairs, sustaining various injuries.

Mr. and Mrs. McNally filed a complaint in trespass in the Court of Common Pleas of the Thirty-second Judicial District seeking damages for injuries related to Mrs. McNally's fall. Trial was begun on May 25, 1978, and at the conclusion of plaintiff's case, the trial judge entered a compulsory non-suit against plaintiffs on the grounds that Mrs. McNally was contributorily negligent as a matter of law. Motions to set aside the non-suit and for a new trial were filed and a three-judge panel denied the motions, one judge dissenting. Appeal was taken to the Superior Court, which affirmed, Judge Wieand dissenting. The question before us on this appeal is whether the lower courts were in error in finding Mrs. McNally's conduct to be contributorily negligent as a matter of law. For the reasons that follow, we hold that the lower courts were in error and reverse.

The Superior Court, 274 Pa.Superior 386, 418 A.2d 460, affirmed the trial court, relied upon a number of cases previously decided by this Court:

Although it is true that these "darkness" cases necessarily depend largely on individual facts, *Dively v. Penn-Pittsburgh Corp.*, 332 Pa. 65, 2 A.2d 831 (1938), this area of the law has been well developed and some general rules have evolved. Thus, in the absence of compelling necessity, it is generally held " 'that one who follows an unfamiliar course in the dark or steps into *darkened and unfamiliar* space, relying upon his sense of touch instead of obtaining and using adequate lighting facilities, and sustains personal injuries, is guilty of contributory negligence as a matter of law.' " *Just v. Sons of Italy Hall*, 240 Pa.Superior Ct. 416, 422, 368 A.2d 308, 312 (1976) (emphasis in original), *quoting Barth v. Klinck*, 360 Pa. 616, 618, 62 A.2d 841, 842 (1949). "[D]arkness is, in itself, a warning to proceed either with extreme caution or not at all."

*Barth v. Klinck, supra,* 360 Pa. at 618, 62 A.2d at 842; *Mogren v. Gadonas,* 358 Pa. 507, 511, 58 A.2d 150, 152 (1948). The controlling factors in determining the question whether one was contributorily negligent in proceeding in the darkness are the degree of darkness and the justification for the injured person's presence in the place of danger. *Dively v. Penn-Pittsburgh Corp., supra; Just v. Sons of Italy Hall, supra.*

The degree of darkness is important in determining if appellant had reason to apprehend the danger. If the area was not totally dark, she may have been reasonably justified in assuming that with appropriate care she could reach the end destination without mishap. In all cases one must use the senses that are available, *Bartek v. Grossman,* 356 Pa. 522, 52 A.2d 209 (1947), and it is only when a plaintiff uses his sense of sight carefully and reasonably believes that he can "see his way", but was then deceived by shadows, that the question of his negligence will be for the jury. *McKown v. Demmler Properties, Inc.,* 419 Pa. 475, 214 A.2d 626 (1965); *Carns v. Noel,* 364 Pa. 77, 70 A.2d 619 (1950); *Falen v. Monessen Amusement Co.,* 363 Pa. 168, 69 A.2d 65 (1949).

274 Pa.Superior 389, 418 A.2d 461.

A review of the cases cited by the Superior Court indicates that the facts of the cases are quite diverse (see footnote *infra*) and that there is occasionally disagreement among members of the Court as to whether a certain act constitutes, as a matter of law, contributory negligence. On the whole, the general observation in *Dively v. Penn-Pittsburgh Corp. supra.,* cannot be improved upon: "There is a multitude of cases of this type to be found in the reports [injury because of darkness], but they necessarily depend largely upon their individual facts." 332 Pa. at 69, 2 A.2d at 833 (1938).

Confining our comments to cases which bear some factual similarity to the instant case, we first observe that *Dively v. Penn Pittsburgh Corp.* sets forth a general rule governing cases where a person is injured in subdued light or semi-darkness:

[W]here there is some fairly compelling reason for walking in a place which, *though dark, is not utterly devoid of light[,] . . . contributory negligence will not be declared as a matter of law. . . .* It may be stated, therefore, that the controlling factors in determining the question of contributory negligence in accident cases of this nature are the degree of darkness and the justification for the injured person's presence in the place of danger.

332 Pa. at 69–70, 2 A.2d at 833 (Citations omitted). (Emphasis added).

One of the reasons given by the Superior Court for its decision was that Mrs. McNally "advanced as a blind person in an engulfing darkness." Although portions of the transcript can be read to support this conclusion, a reading of the whole convinces us that the Superior Court was in error. The *defendant,* called by the plaintiff as a witness, testified as follows:

Q. Simple question, sir. If that light behind the rest room door was not on would people be able to see the steps?

A. If the door is open, they can see the steps because that light from the other room.

Q. I see. In other words, your testimony is here today that there is enough light coming from outside the restaurant when the door is open to filter in so that they can see the steps; is that correct, sir?

A. Yes. But not enough, not enough.

Q. My question is: Could they see the steps?

A. They see the steps, but not enough to go down.

N.T. 49. Similarly, Mrs. McNally testified:

Q. You walked toward that door [marked by a "Restrooms" sign], is that correct?

A. Yes.

Q. Was the door opened or closed?

A. It was opened.

Q. Was there light coming from the outside through that door?

A. A little light.

Q. Was the restaurant itself well lit?

A. It was lit.

Q. There was light inside the restaurant itself?

A. Yes.

Q. The door was opened; is that correct?

A. Yes.

Q. Did you walk inside?

A. Yes.

Q. And once you got inside, what did you do?

A. It was dark. So I put my hand up to feel for the light switch, and I fell into darkness.

 \* \* \* \* \* \*

Q. Mrs. McNally, as far as you can remember, and as far as you know, were there any signs indicating, saying danger, steps?

A. No.

Q. Was there any sign indicating that the rest room was not in fact inside that door but down the steps?

A. No.

Q. Was there anything to alert you inside the restaurant that the rest rooms were not behind that door?

A. No.

Q. Mrs. McNally, once you stepped into that room where did you think you were, before you fell?

A. I thought it was a room where there would be another room where the rest room was. I didn't know.

 \* \* \* \* \* \*

Q. Once you walked into this room how many steps did you take before you fell?

A. I don't know. I turned right, looking for the light switch. I moved into the room and turned right, looking for the light switch.

Q. Did you take five steps?

A. No.

Q. Took less than three steps?

A. Yes.

Q. Your testimony is that as soon as you walked in what happened?

A. I fell down the steps into the darkness.

N.T. 13–15. On cross-examination Mrs. McNally testified as follows:

Q. All right. As you walked in [the door under the "Restroom" sign] and looked, could you see the wall in front of you?

A. I couldn't see nothing.

Q. Absolutely pitch black I think you said in your deposition?

A. It was dark in there, yes.

Q. I think you used on a number of occasions it was pitch black?

A. Well, pitch black to me is dark.

Q. Could you see the floor as you walked in through this partially opened door, however far open it was? Could you see the floor as you walked in?

A. No. But I could feel it. I was walking on the floor.

Q. So that as you walked into the doorway itself you could see absolutely nothing in this area, is that correct?

A. I imagine there was a little light shining, but when I moved in it was dark.

\* \* \* \* \* \*

Q. While you were looking for that light switch you could see nothing as to where you were going?

A. I was not looking. I was feeling with my hands.

Q. When you were walking around in this space you were not looking down at the floor to see where you were walking. Were you looking up at your hand groping against the wall I think you said?

A. I couldn't see. It was dark.

N.T. 28–29, 32. At the very least, on the question of darkness, the evidence is open to a number of interpretations. It seems most plausible that Mrs. McNally could see the floor of the landing before she entered the room in which the landing was located, but that as she turned to her

right in search of a light switch, she relied on her sense of touch, stepping forward to find the light switch before proceeding further.

■ The standard for determining whether an involuntary non-suit should have been granted is:

> ... plaintiff must be *given the benefit of every fact and reasonable inference arising from the evidence.* (Citations omitted). *All conflicts in the testimony must be resolved in plaintiff's favor* and the entry of the compulsory non-suit is only supportable in a clear case where the facts and circumstances have as the only conclusion the absence of liability.

*Rutter v. Northeastern Beaver County School District,* 496 Pa. 590, 595, 437 A.2d 1198, 1200 (1981) (Emphasis added), citing *McKenzie v. Cost Brothers,* 487 Pa. 303, 307, 409 A.2d 362, 364 (1979).

■ If we grant the benefit of every fact, every reasonable inference and every conflict in the evidence to the plaintiff, it becomes evident that the Superior Court erred in applying general rules from diverse cases too closely to the instant case, rather than reviewing the question of reasonableness of conduct within the circumstances of the present case.* The question of plaintiff's reasonableness, as Harper and James point out, depends at least in part upon what legitimate expectations plaintiff has as to defendant's conduct:

---

* Of the cases relied upon by the lower court in that portion of the opinion cited *supra, Dively v. Penn-Pittsburgh Corp.* and *Mogren v. Gadonas* are factually similar to the instant case and hold that the question of plaintiff's contributory negligence was for the jury. 332 Pa. at 69, 358 Pa. at 512. *Barth v. Klinck* concerned injuries sustained by a property owner who chose an obviously unsafe course to her house at night and in the rain when she stepped over barricades erected in her yard by a concrete contractor she had hired to repair her sidewalk.

*Barteck v. Grossman* involved injuries sustained by a person who followed a real estate salesman into a darkened room of a commercial building and fell through an open trap door. *Falen v. Monessen Amusement Co.* concerned an injury sustained in a dimly lit parking lot by a woman who stepped onto and beyond a retaining wall, thinking that the wall was the edge of a sidewalk. Recovery was

Contributory negligence, like negligence, must involve a risk that is <u>unreasonable</u> under all the circumstances, and this test again generally invokes the jury's function: to find and apply the dictates of the community conscience in the matter. Moreover, some of the crystallized rules that have evolved (for striking this balance) minimize contributory negligence. Here, as in the case of defendant's negligence, plaintiff's conduct is to be evaluated in its setting in the circumstances, and plaintiff will be entitled to make assumptions that are reasonable in the light of them. Negligence on either side of the scale is a term of relationship. *Thus plaintiff may expect that defendant will obey the law and will act as a reasonable man would,*

permitted despite the property owner's contentions that plaintiff had either assumed the risk (if she could see the hazard) or that she was negligent as a matter of law (if she proceeded even though she could not see what lay before her). The plaintiff testified as follows on cross-examination:

"A. I seen this wall and I stepped on it, it happened so quick that I didn't have time to do anything. I stepped right in, I thought I was stepping up on the sidewalk. . . . Q. And you didn't look to the right? A. Couldn't see, it was dark down in there, you couldn't see. . . . Q. Why didn't you wait before you took the second step to see where you were stepping? . . . A. Well, it was dark and I was just walking that is all. Q. And you stepped right into something that you didn't know was there? A. That is right, it was dark in there. Q. And you didn't wait to find out where you were stepping, did you? . . . A. No, I didn't.

363 Pa. at 175, 69 A.2d at 68 (Dissenting Opinion).

The majority stated: "[T]he jury was justified in finding that Mrs. Falen had a 'fairly compelling reason for walking in a place which, though dark, [was] not utterly devoid of light.' She was rightfully on the parking lot and chose as a way of egress what appeared to her in the dim light to be a safe course. In such circumstances, contributory negligence as a matter of law may not be declared." 363 Pa. at 172–173, 69 A.2d at 67.

This result seems justified mainly by the phenomenological observation that we propel ourselves from one location to the next by utilizing different combinations of our senses, which combination varies from moment to moment. Once we have seen a place that seems safe to enter, it may not be uncommon or unreasonable, depending on the circumstances, to proceed a minimal distance without a totally clear view of the walking surface, if one proceeds with caution, particularly if one has been led to believe that the area is safe and if, as in the present case, one proceeds only far enough to locate a light switch.

*unless the circumstances should warn him to the contrary.*
*And he may likewise assume that* highways and *premises*
*ostensibly prepared for his reception are reasonably free*
*from defects and pitfalls.* Reasonable expectations of
safety are just as much a part of ordinary prudent con-
duct as are expectations of danger.

2 Harper and James, The Law of Torts, § 22.10 (1956)
(Footnotes omitted) (Emphasis added except in the first
instance).

We have dealt with the question of the reasonableness of
plaintiff's acts in two cases similar to the present case. In
*Mogren v. Gadonas,* 358 Pa. 507, 58 A.2d 150 (1948), plaintiff,
a patron in a restaurant, intended to go to the restroom and
went through a door marked "Ladies," proceeding along a
partially lit hallway. At the end of the hallway plaintiff
heard the sound of dishes rattling, and, assuming that the
restroom was not in that direction, turned into a door about
nine feet to her left, thinking that it was the door to the
restroom. As she entered the room and stepped to reach for
a light switch, she fell into a hole and was injured. This
Court stated in *Mogren* that plaintiff had certain reasonable
expectations of the restaurant operator:

A patron of a restaurant *has a right to assume* that it has
a toilet room for his or her use and that it is in a safe
condition. When Mrs. Mogren saw the word "Ladies"
over the door leading out of the restaurant, she *was
justified in interpreting that word as saying to her: "In
this direction there is a toilet room for your use and you
can enter it in safety."* For a toilet room to be unlighted
during these times when electricity is being conserved is
not unusual. Patrons entering such a dark room "feel
around" for the switch. *Those entering a dark toilet room
to which they are invited cannot be adjudged negligent as
a matter of law.*

358 Pa. at 511–512, 58 A.2d at 152 (Emphasis added).

Similarly, in *Dively v. Penn-Pittsburgh Corp.,* 332 Pa. 65, 2
A.2d 831 (1938), a plaintiff went to the ladies' room in a

public theatre. She entered an alcove over which was a sign marked "Ladies." Directly in front of her was a screen, and to her left an unmarked door. Assuming that the toilet room was to the rear of the screen, plaintiff stepped around the screen, where there was a narrow passageway. At her first step, she was precipitated down a flight of stairs, which was normally covered by a trap door, but which was uncovered at this moment. As the Court stated in *Dively*:

> The question of plaintiff's contributory negligence was undoubtedly for the jury.

* * * * * *

It is common knowledge that lavatory and rest room accommodations are afforded to patrons in all large places of public exhibitions or amusements. Such facilities are as much a part of the premises to which patrons are invited as the auditorium itself, and *plaintiff, walking into the alcove, over the archway of which was the sign "Ladies," was as fully within her rights, and entitled to as much protection, as when seated among the audience at the exhibition. Nor, under the conditions of insufficient light furnished in the alcove, should a court declare that she was guilty of contributory negligence because she failed to observe the proper door, especially as it was not marked by any appropriate sign.* . . . Seeing the opening at the side of the screen, she could reasonably assume that it was the appropriate means for reaching her destination: Restatement, Torts, section 343, comment b. True, had she ventured to walk in the darkness behind the screen, such conduct might have been negligent, but her fall resulted from the first step she made as she rounded it and not from any attempt to venture across an unlit, unfamiliar area.

332 Pa. at 69–70, 2 A.2d at 833–834 (Emphasis added).

It is true that the *Dively* and *Mogren* cases contain language which could be interpreted to mean that recovery may be permitted in such cases only when there is an exigent purpose in visiting the restroom. In the present case, plaintiff testified that she went to the restroom to

wash her hands. We believe, however, that such a narrow interpretation of these cases is unwarranted. So long as the patron has the purpose of using the restroom facilities and proceeds in a reasonable manner, recovery should not be barred as a matter of law merely because plaintiff may not have been in dire need of a toilet.

Viewing the evidence in the present case in the light most favorable to Mrs. McNally, and resolving conflicts in the testimony in her favor, Mrs. McNally proceeded into a dimly lit area marked by a sign as a "Restroom." Unknown to her, the room she entered was the landing of a stairwell. As she turned to her right to find a light switch, feeling with her hands along the wall and taking fewer than three steps, she fell down the stairs. Whether Mrs. McNally's actions were reasonable was for the jury.

Reversed and remanded for a new trial.

NIX, J., concurs in the result.