452 A.2d 1376

Douglas J. MEYER, a Minor by his Guardian, Larry M. MEYER and Larry M. Meyer and Boneta F. Meyer, Appellants,

v.

Russell M. HEILMAN, Jr. and Helen V. Heilman, t/d/b/a R.F. Heilman and Son and International Harvester.

Superior Court of Pennsylvania.

Argued Dec. 2, 1980.

Filed Nov. 30, 1982.

Petition for Allowance of Appeal Granted March 29, 1983.

Thomas A. Ehrgood, Lebanon, for appellants.

Daniel K. Deardorff, Carlisle, for Heilman, appellees.

James R. Clippinger, Harrisburg, for International, appellee.

Before HESTER, CAVANAUGH and VAN der VOORT, JJ.

CAVANAUGH, Judge:

On August 8, 1974, Douglas J. Meyer (Douglas) then aged 10 years, suffered injuries when he fell from the axle of a tractor operated by an employee of the defendants Heilman which had been manufactured by defendant International

Harvester Company (International). Douglas had been riding the tractor by standing on the axle holding on to the operator's seat and the headlight bar. The axle was flat on the top and the evidence indicates that one of Douglas's feet was placed on a chain wound around the axle. No fault was attributed to the tractor operator, a friend of Douglas, and Douglas had no occasion to be riding on the Heilman tractor on Heilman land other than for "the fun of it". The tractor had been engaged in a common farm activity of pulling a manure spreader and providing power thereby by means of a revolving shaft, known as a power take off (PTO). The injuries incurred by Douglas were caused by entanglement with the PTO shaft.

The tractor in question had been manufactured by International in 1952 and had become the property of Heilman from a third party some years previously. Originally that tractor had been equipped with a safety shield which had been removed by Heilman some years previously because with the safety shield affixed, the field sprayer (not made by International) could not physically be attached. Heilman also owned John Deere tractors manufactured in 1949 and 1951 which were equipped in addition to the main safety shield with a small (flipper) shield on a spring which unless in some way wired or tied up would render the PTO inoperable. On a larger tractor also manufactured by International the master shield was in place while operating a manure spreader. On the tractor in issue the PTO was only used in connection with the manure spreader and sprayer. Douglas's testimony that he had ridden on that tractor at least ten times with Heilman employees and once with a Heilman partner was not contradicted, although admittedly he never rode it before with the PTO in operation. Nor was it contradicted that he did not know then what a PTO was and that he had never been warned of it.

Douglas and his parents sued for damages predicating liability as to International under Section 402A, Restatement (Second) of Torts and as to defendants Heilman on negligence. The matter was tried to a judge and jury. At

the conclusion of the plaintiffs' case the court granted International's motion for a compulsory non-suit. The trial then proceeded against defendants Heilman alone and the jury returned a verdict in favor of the defendants Heilman. Post-trial motions to remove the compulsory non-suit as to International and for judgment n.o.v. and new trial were refused.

## Section 402A

As acknowledged by the court below the entry of a compulsory non-suit is limited to clear cases where the facts and circumstances have as the only conclusion the absence of liability. Pa.R.C.P., 231(b), *McNally v. Liebowitz*, 498 Pa. 163, 445 A.2d 716 (1982); *Rutter v. Northeastern Beaver County School District*, 496 Pa. 590, 437 A.2d 1198 (1981); *McKenzie v. Cost Brothers Inc.*, 487 Pa. 303, 409 A.2d 362 (1979); *Speicher v. Reda*, 290 Pa.Super. 168, 434 A.2d 183 (1981). The primary error of the opinion below lay in regarding the plaintiffs' case as though it were wholly bottomed on the testimony of plaintiffs' expert, which was indeed frail. The error of the court below in the discussion leading to the grant of the non-suit was its iteration that the defect alleged must be unreasonably dangerous at the time it left the manufacturer's hand.

Section 402A of the Restatement (Second) of Torts is part of Pennsylvania law. *Lobianco v. Property Protection, Inc.*, 292 Pa.Super. 346, 437 A.2d 417 (1981). It reads:

Section 402A. Special Liability of Seller of Product for Physical Harm to User or Consumer.

(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or his property, if (a) the seller is engaged in the business of selling such a product, and (b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

(2) The Rule stated in Subsection (1) applies although (a) the seller has exercised all possible care in the preparation and sale of his product and (b) the user or consumer has not bought the product from or entered into any contractual relation with the seller.

Where, as here, bad design of a product is charged, the words "unreasonably dangerous" have no independent significance and merely represent a label to be used where it is determined that the risk of a loss should be placed upon the supplier. In this type of case, the manufacturer is a guarantor, and the jury may find a defect where the product left the supplier's control lacking any element necessary to make it safe for its intended use or possessing any feature that renders it unsafe for its intended use. It is clear that the term "unreasonably dangerous" has no place in the instructions to the jury as to the question of "defect" in this type of case: *Azzarello v. Black Bros. Co.*, 480 Pa. 547, 556, 559, 391 A.2d 1020 (1978).

■ In the case at bar, it was error for the court below to, in effect, charge itself during the discussion before the entry of the non-suit, that the defect must be "unreasonably dangerous", when it could not have charged the jury so.[1] In its opinion the court below did indeed reveal the weakness of the expert testimony but went no further. It did not consider whether the unrefuted lay testimony was sufficient to raise a jury question.

That testimony, from a Heilman partner and the tractor operator, established that the tractor in issue could not be connected to a commonly used spraying attachment requiring application of power from the tractor through the PTO while the master shield was in place; that John Deere tractors of a similar vintage were designed with a secondary safety device in the form of a flipper shield which rendered the PTO inoperable when it was in place; and that tractors

---

1. The Court: We recognize that as dangerous. But the question begged is: Is it unreasonably dangerous?
   Mr. Ehrgood: That's for the jury to decide.
   The Court: Not necessarily. (R. 447a, also Sec. R. 476a).

manufactured by International have a similar attachment permitting PTO power with the master shield in place while using a manure spreader. There was, then, evidence that the tractor in issue left International's control lacking elements (i.e., adaptability to use of PTO with safety and inoperability when unsafe) necessary to make it safe for its intended use or possessing a feature that rendered it unsafe for its intended use, within the meaning of *Azzarello, supra.* That evidence was not, of course, conclusive, but it did raise a question for the jury's decision. Under the plaintiffs' averments recovery would be justified. It was for the jury to determine if the facts supported the averments. *Azzarello, supra.* Upon a new trial if there is testimony as to alternatives to the manufacturer's safety shield design, that theory of defect should also be considered by the jury.

## Negligence

The compulsory non-suit in favor of International Harvester was entered immediately after the plaintiffs rested their case. The trial court informed the jury that International had been removed "as a party to this suit and is no longer to be considered by you as a party-defendant" and the matter went forward against defendants Heilman alone. The jury found against the plaintiffs.

In their motion for a new trial the plaintiffs complained that they were prejudiced by the court's granting a compulsory non-suit in their case against International. The court below labeled plaintiff's argument as labored; a unique theory not supported by authority (R. 574a).

It was error, and a grave breach of established trial practice, to enter the compulsory non-suit before all testimony had been presented. The proper practice before entering a non-suit in favor of one of two or more defendants, is to allow the other defendants to present their testimony on the question of the liability of each and all of them. As Chief Justice Horace Stern observed in *Frank v. W.S. Losier & Co., Inc.,* 361 Pa. 272, 275–6, 64 A.2d 829 (1949), while it is true that Pa.R.C.P. 2232(d) provides that when a plaintiff

joins two or more defendants and the evidence does not justify a recovery against all, the court shall enter a non-suit or direct a verdict in favor of any defendant not shown to be liable either jointly, severally or separately, this provision was merely intended to abrogate the strict common law rule that where a joint liability of defendants was pleaded the plaintiff was obliged to recover against all or none; it certainly was not intended to deprive a defendant of the right to present testimony before a co-defendant should be relieved from liability by a non-suit in his favor. In *Loch v. Confair,* 372 Pa. 212, 218, 93 A.2d 451 (1953), it was stated that each defendant should be given the opportunity as well as the duty of establishing that it was not guilty of any negligence that resulted in the accident.

Although these authorities are couched in terms of the rights and duties of defendants *inter se* and the prejudice that can result to one defendant by prematurely entering a compulsory non-suit as to another, it is evident that premature entry of a non-suit can also prejudice a plaintiff, particularly when the premature entry of the non-suit was erroneous in the first instance. As we recently stated in *Mazza v. Mattiace,* 284 Pa.Super. 273, 277–78, 425 A.2d 809, 811 (1981):

We think this principle as to the grant of non-suits in multi-defendant litigation is sound and reaffirm its applicability. In support of this reaffirmation we note that a nonsuit is an extraordinary intervention into the jury process and as such is properly entered only in a clear case. *Hader v. Coplay Cement Manufacturing Company,* 410 Pa. 139, 189 A.2d 271 (1963); *Frangis v. Duquesne Light Company,* 232 Pa.Super. 420, 335 A.2d 796 (1975). A non-suit may not be granted unless the jury, viewing all the evidence and all reasonable inferences arising from it, in the light most favorable to the plaintiff, could not reasonably conclude that the elements of the cause of action have been established. *Ford v. Jeffries,* 474 Pa. 588, 379 A.2d 111 (1977); *Reuther v. Fowler & Williams, Inc.,* 255 Pa.Super. 28, 386 A.2d 119 (1978). Further,

experience has shown that in multi-defendant litigation the evidence of one defendant may inculpate another the same as if introduced as part of plaintiff's case. *See Smith v. Lit Brothers, supra* [174 Pa.Super. 102, 100 A.2d 390]; *Jinks v. Currie,* 324 Pa. 532, 188 A. 356 (1936). If a nonsuit has already been granted as to that defendant there is a serious risk that the case will not be disposed of on its merits. Finally, if the whole record is devoid of evidence from which a jury might find a defendant liable there is time enough to eliminate that defendant by granting an appropriate motion for a directed verdict.

Our removal of the compulsory non-suit here as to International without granting a new trial as to the negligence of the defendants Heilman would unfairly deprive International of the opportunity to defend on the basis, for example, that defendants Heilman were wholly responsible for the injury to Douglas in that they had removed the master shield.

Accordingly, it is ordered that the compulsory non-suit entered in favor of defendant International be removed and that a new trial be afforded to plaintiffs as to both defendants on all issues.

VAN der VOORT, J., concurs in result.